Derwin **ANDERSON,** Appellant,

v.

The **STATE** of Texas, Appellee.

No. 12–91–00240–CR.

Court of Appeals of Texas, Tyler.

Feb. 17, 1994.

Rehearing Denied May 18, 1994.

---

Donald F. Killingsworth, Tyler, for appellant.

Amy Blalock, Tyler, for appellee.

RAMEY, Chief Justice.

Appellant Derwin Anderson ("Anderson") challenges his conviction for failure to stop and render aid. After waiving his right to a jury, Anderson was tried before the court, found guilty, and sentenced to five years' confinement. He was also ordered to pay restitution to the accident victim. Anderson brings three points of error. We will affirm the judgment.

On August 26, 1990, shortly after one o'clock in the morning, Ray Arterberry ("Ar-

terberry"), while riding a bicycle, was struck by a vehicle near the corner of Tenneha and Harmony Streets in Tyler. Though Arterberry was seriously injured by the collision, the driver of the vehicle did not stop and render aid as required by Tex.Rev.Civ.Stat. Ann. art. 6701d, § 38(a) (Vernon 1977). Not long thereafter, Mary Betts ("Betts") came forward and informed the police that, at that date and time, she was a passenger in a vehicle driven by Anderson, and that, near the intersection of Tenneha and Harmony, Anderson struck someone riding a bicycle. According to Betts, Anderson's only reaction at the time was to say that the person he hit should not have been in the street.

Anderson's first point of error asserts that there was insufficient evidence to support his conviction. The standard for reviewing the sufficiency of the evidence is to view it in the light most favorable to the jury's verdict to determine, from the evidence presented, whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jones v. State*, 833 S.W.2d 118, 122 (Tex.Cr.App.1992).

■ Anderson first argues that Betts' testimony, the only testimony linking him with the crime, should have been excluded under the marital privilege, on the basis that Betts was his common law wife. There are two problems with this contention. The first is that the marital privilege does not confer a power on one spouse to prevent the other from testifying. As set out in Tex.R.Crim. Evid. 504(2)(a),

> The spouse of the accused has a privilege not to be called as a witness for the state. This rule does not prohibit the spouse from testifying voluntarily for the state, even over objection by the accused.

Here the evidence discloses that Betts volunteered this information to police, even after Anderson had threatened her to keep her from telling anyone about the accident.

■ Additionally, the court below, as authorized by Tex.R.Crim.Evid. 104, heard evidence on whether Betts was, in fact, Anderson's common law wife. This was an issue on which Anderson had the burden of proof, *Weaver v. State*, 855 S.W.2d 116, 120

(Tex.App.—Houston [14th Dist.] 1993, no pet.), and the trial court's ruling on the applicability of this privilege cannot be set aside unless it abused its discretion in resolving the predicate factual dispute. *Reece v. State*, 772 S.W.2d 198, 201 (Tex.App.—Houston [14th Dist.] 1989, no pet.). Betts testified that, though she had once co-habited with Anderson, such arrangement ending about a year before the collision, she never regarded herself as his wife, nor ever held herself out to be his wife. Though there was some conflicting testimony, we cannot conclude that the trial court abused its discretion in finding that no common law marriage existed at the time of this incident.

■ Anderson additionally argues that the evidence is insufficient because:

1) Betts was unable to identify Arterberry as the person struck by Anderson,

2) Arterberry was unable to identify the vehicle that struck him or its driver, and

3) there were some inconsistencies in descriptions of the automobile and in prior identification of the place of the accident.

The testimony of Betts and Arterberry directly established the facts of the incident from the perspectives of both the bicyclist and of a passenger in the vehicle. And both, in their testimony, located the collision at the same place and at the same time. Though some discrepancies and arguable misstatements were brought out in the record, it was the fact-finder's duty to resolve those discrepancies. Based on a review of the evidence before the fact-finder, and viewing it in the light most favorable to the verdict, we conclude that a rational trier of fact could have found the elements of the offense beyond a reasonable doubt. Anderson's first point of error is therefore overruled.

■ Anderson's second point of error asserts that the conviction must be reversed because of a fatal variance between the indictment and the proof. The indictment alleges that Anderson was driving a "1979 Chevrolet automobile" at the time of the incident, and the proof at trial established only that the vehicle involved in the accident was a Monte Carlo.

With respect to the need to establish by proof the allegations of the indictment to the letter,

> [t]he general rule is that allegations which are not essential to constitute the offense, and which might be entirely omitted without affecting the charge against the defendant, and without detriment to the indictment, are treated as mere surplusage. The exception to this rule exists where the unnecessary matter descriptive of that which is legally essential to charge a crime is pled, then the unnecessary pleading must be proven as alleged.

*Whetstone v. State,* 786 S.W.2d 361, 364 (Tex. Cr.App.1990) (citations and emphasis omitted). The phrase "that which is legally essential to charge" has been uniformly understood to refer to the elements of the crime. *Upchurch v. State,* 703 S.W.2d 638, 640 (Tex. Cr.App.1985) ("When the unnecessary matter in the charging instrument describes an essential element of the offense, the unnecessary matter must be proven at trial.") *Rogers v. State,* 756 S.W.2d 332, 335 (Tex.App.— Houston [14th Dist.] 1988, pet. ref'd) ("The determining test of the State's burden to prove unnecessary allegations in the indictment is whether the challenged language describes an essential element of the offense charged.") *Borrego v. State,* 800 S.W.2d 373, 376 (Tex.App.—Corpus Christi 1990, pet. ref'd) ("Unnecessary words or allegations contained in an indictment, however, may be disregarded if they are not descriptive of a legally essential element of the charged offense.").

The elements of the offense of failure to stop and render aid are "(1) a driver of a vehicle, (2) involved in an accident, (3) resulting in injury or death of any person, (4) intentionally and knowingly, (5) fails to stop and render reasonable assistance." *Galvan v. State,* 846 S.W.2d 161, 164 (Tex.App.— Houston [1st Dist.] 1993, no pet.) *quoting Steen v. State,* 640 S.W.2d 912, 915 (Tex.Cr. App.1982). Anderson's contention, then, is that the words "1979 Chevrolet automobile" are descriptive of an essential element of this

offense, and that the State's failure to prove the make and model of the vehicle involved in the collision requires reversal of the judgment.

We initially note that the automobile in question was identified as a "Monte Carlo" during the trial. That a Monte Carlo is a type of Chevrolet is a fact both known generally in this jurisdiction and capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. We may therefore take judicial notice of such fact. Tex.R.Crim.Evid. 201(b). The evidence that Anderson was driving a Monte Carlo was sufficient to support the allegation in the indictment that he was driving a Chevrolet, and there was therefore no variance between indictment and proof on that point.

The next question is whether the failure to prove the model year of Anderson's automobile requires a reversal. The date "1979" was admittedly not essential to constitute the offense, and it could have been entirely omitted from the indictment without affecting the charge against the defendant, and without detriment to the indictment. The exact question for decision, then, is whether the date "1979" describes an essential element of the offense of failure to stop and render aid.

Anderson argues that it does, since it is descriptive of "vehicle." But the test is whether the term in question describes an *element* of the offense, not whether it might describe another term itself descriptive of an element of the offense. The Supreme Court has identified the first element of this offense as "a driver of a vehicle". The phrase "of a vehicle" is thus no more than a redundant modifier of the word "driver"; "of a vehicle" is not a separate element of this offense.[1] Indeed, the offense can be entirely described without any explicit reference to the vehicle: "a driver involved in an accident resulting in injury or death of any person intentionally and knowingly fails to stop and render reasonable assistance." The term "1979", rather than describing an element of the offense, "a driver of a vehicle", simply modifies a

---

1. This fact distinguishes this case from those in which, for example, the indictment contains a specific description of a deadly weapon, whose display or use is a vital part of the offense. *See Borrego v. State,* 800 S.W.2d 373, 376 (Tex. App.—Corpus Christi 1990, pet. ref'd).

phrase which is itself surplusage or redundantly descriptive within the defined element. Because, then, the term "1979" cannot be accurately characterized as a description of an element of this offense, we hold that its inclusion in the indictment was surplusage, and need not have been proven by the State.

As an additional ground for this conclusion, we are of the opinion that, as used in this indictment, the term "1979" is more correctly understood as modifying "Chevrolet" than as modifying "automobile". Because "Chevrolet" is not an element of the offense, the term describing it is surplusage. Anderson's second point of error is therefore overruled.

■ Anderson's third point of error faults the trial court for failing to sustain his special plea of double jeopardy. The proceedings below constituted the State's second attempt to try this offense. The first trial ended in a mistrial, on Anderson's motion, after a police officer testifying for the State made reference to having seen Anderson at a parole hearing, a matter which the court had previously ruled should not have been put into evidence.

■ When an earlier trial is terminated by the defendant's own motion, there is no exposure to double jeopardy in a re-trial, unless the defendant establishes that the prosecutor, in causing the mistrial, intended to subvert the defendant's double jeopardy protection. *Black v. State,* 845 S.W.2d 368, 368 (Tex.App.—Houston [1st Dist.] 1992, no pet.). The court below heard testimony on this question before proceeding with the re-trial; the State contended that, though the question eliciting the testimony about the parole hearing was unintentionally broad, it was not calculated to bring about a mistrial. After hearing the evidence the court found only that the State was negligent in so framing the question; there was no finding of any intentionally wrongful conduct. We also conclude that the record is empty of any probative evidence that the State intended to subvert Anderson's right to be free from double jeopardy. Anderson's third point of error is overruled.

The judgment of the court below is **affirmed.**