**Kevin Joseph REESE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 12-90-00192-CR.**

Court of Appeals of Texas, Tyler.

July 17, 1992.

Rehearing Denied Jan. 6, 1993.

Barbara L. Law, Huntsville, for appellant.

Amy Blalock, Asst. Dist. Atty., Tyler, for the State.

BILL BASS, Justice.

In a trial to the court, Appellant was convicted of the misdemeanor offense of evading arrest and sentenced to 120 days in the Smith County Jail. On appeal, Appellant challenges the sufficiency of the evidence to support the conviction. We will affirm.

Appellant's first point of error alleges that the evidence was insufficient to prove that Appellant evaded a *lawful* arrest; his second point alleges that the evidence is insufficient to prove that he evaded a lawful arrest rather than an investigative detention. We will address both points together.

According to the State's evidence adduced at trial, on or about April 5, 1990, at approximately 12:35 a.m., Richard O. Ar-

buckle, a patrolman for the Tyler Police Department, received information via his police radio that three officers had been dispatched to the scene of a residential burglary on Edinburgh street. Thereafter, Arbuckle received information from these officers that the suspect had fled the scene. The officers radioed that the suspect's name was Kevin Reese and gave a detailed description of Reese's appearance. Moments later, the police dispatcher broadcast the Appellant's address and apartment number at the Embarcadero Apartments in Tyler, Texas.

Arbuckle, who was on patrol in the area of Appellant's residence, drove to Appellant's apartment complex and knocked on Appellant's door. Eventually, Arbuckle was greeted by Appellant's roommate who informed him that Appellant had left for Houston. However, about this time, Appellant approached the complex. Since Appellant met the description given over the radio, Arbuckle spoke to Appellant and asked him to identify himself. Appellant informed Arbuckle that his name was Mark Morgan; however, Appellant's roommate told Arbuckle that Appellant's name was Kevin Reese. Arbuckle then questioned Appellant regarding the burglary on Edinburgh, but Appellant denied taking part in it. At this point, Arbuckle radioed for verification that Appellant was indeed the correct suspect, and upon receiving verification, he informed Appellant that he was under arrest and instructed him to turn around and place his hands behind his back. Appellant disregarded Arbuckle's instruction, backed up and then began walking away. When Arbuckle pursued him, Appellant broke into a run. After a lengthy chase afoot, Arbuckle apprehended and arrested Appellant.

Appellant related a version of the facts which completely contradicted that presented by the State. According to Appellant, on the night of April 5, 1990, he had an argument with his girlfriend because she had another man with her. Appellant and the man engaged in a minor scuffle, and afterwards, Appellant got his girlfriend's neighbor to drive him home. When Appellant arrived at the Embarcadero Apartments, he noticed that there was either a policeman or security guard talking to his roommate. Appellant said that this did not surprise him because his roommate was on probation for DWI and also because there were always lots of police or security guards at his apartment complex. Appellant stated that he had returned home about 1:00 a.m. to pick up some money and walk over to the grocery store. According to Appellant, he then proceeded to walk down the sidewalk toward the grocery store when Arbuckle ran up from behind him. Appellant denied that he had run from Arbuckle and inferred that he could have gotten away from Arbuckle if he had wanted to since he is a fairly fast 10K runner. Appellant also stated that Arbuckle neither identified himself as a police officer nor informed Appellant that he was under arrest; instead, Arbuckle just slammed Appellant's face against the sidewalk, said something about a burglary and called Appellant all sorts of names. Appellant further testified that he had not had any intention of going to Houston because he had to be at work at 8:00 a.m. that morning. Appellant stated that shortly thereafter, two more officers arrived, "and a sergeant came running up and he put a gun to my head and he told me that he was going to blow my brains out."

■ In reviewing the sufficiency of the evidence, the relevant question is whether, after viewing the evidence in a light most favorable to prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307 at 320, 99 S.Ct. 2781 at 2789, 61 L.Ed.2d 560 (1979); *Dickey v. State*, 693 S.W.2d 386, 387 (Tex.Cr.App.1984). The offense of evading arrest is set forth in TEX.PENAL CODE ANN. § 38.04 (Vernon 1992):

(a) A person commits an offense if he intentionally flees from a person he knows is a peace officer attempting to arrest him or detain him for the pur-

pose of questioning or investigating possible criminal activity.[1]

(b) It is an exception to the application of this section that the attempted arrest is unlawful or the detention is without reasonable suspicion to investigate.

The State must have proved the following six elements in order to establish that Appellant evaded a lawful arrest: (1) a person (2) intentionally flees (3) from a peace officer (4) with knowledge he is a police officer (5) the peace officer is attempting to arrest the defendant (6) the attempted arrest is lawful. *Johnson v. State*, 634 S.W.2d 695 (Tex.Cr.App.1982); *Alejos v. State.* 555 S.W.2d 444 (Tex.Cr.App.1977).

■■■ Since Appellant was not apprehended pursuant to a warrant, the evidence must establish that Arbuckle had probable cause to arrest Appellant and that circumstances existed which made procuring a warrant impracticable. *Washington v. State*, 518 S.W.2d 240, 242 (Tex.Cr.App. 1975). Tex.Code Crim.Proc.Ann. art. 14.04 provides that:

Where it is shown by *satisfactory proof* to a peace officer, upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without warrant pursue and arrest the accused.

(Emphasis added.)

Where an arrest is made pursuant to a police broadcast, the test for probable cause is the sufficiency of the information known to the officer who made the broadcast request. *Crane v. State*, 786 S.W.2d 338 (Tex.Cr.App.1990); *Williams v. State*, 621 S.W.2d 609, 611 (Tex.Cr.App.1981). The officer broadcasting the request need only relate the information necessary for the arresting officer to know who is wanted. *Crane*, 786 S.W.2d at 346. "Police broadcasts, based on probable cause, reporting a felony and a description of the suspect satisfy the requirements for arrest under Article 14.04." *Crane*, 786 S.W.2d at 346; *Myre v. State*, 545 S.W.2d 820, 826

(Tex.Cr.App.1977). Here, Arbuckle received information from a police broadcast which reported a felony and specifically identified Appellant by name and description as the perpetrator of the offense. Arbuckle's testimony with regard to the broadcast follows:

Q: [By State's attorney] Let me ask you this Officer Arbuckle. On that date, April 5th, 1990, do you recall anything out of the ordinary occurring?

A: At approximately 035 hours, Officer Perrett, J.E. Smith, and Bryan Allen were dispatched to a residential burglary in process at 5000 Edinburgh. I listened to the radio to the progress of the call. When the officers arrived, they announced on the radio that the suspect had fled the scene. Officer Perrett gave further information as to what had happened at the scene. The suspect had broken a window.

. . . . .

Q: Officer Arbuckle, you were listening to your radio?

A: That is correct.

Q: And you heard Officer Perrett on the radio?

A: That is correct.

Q: And was he making a statement describing or explaining an event that was occurring while he was perceiving that condition—perceiving that event or immediately after that?

A: Immediately after that.

Q: And what did Officer Perrett state over the radio?

A: He stated that a subject by the name of Kevin Reese had attempted entry into an apartment, cutting himself as he did so. He had been in a fight.

. . . . .

Q: What else did Officer Perrett state over the radio?

A: Officer Perrett stated that the suspect—or Kevin Reese was intoxicated, that he would be wearing a light colored shirt. He was a white male with

---

**1.** The information in the instant case charges Appellant with the offense of evading arrest, not evading investigatory detention.

curly brown hair and had a mustache, and that he would be cut on his hand where he had entered into the bedroom window at the complainant's apartment.

.     .     .     .     .     .

Q: What happened next, Officer Arbuckle?

A: I waited for the dispatcher to check some of our in-house records to see if we had any type of an address listing on Mr. Reese. They found that he was last known to live at the Embarcadero Apartments, No. 125 on Old Bullard Road. That's the section of town that I work in. I was pretty close to the area, so I proceeded to that area to see if Mr. Reese would return home.

We find this testimony satisfactory to establish probable cause to arrest under Article 14.04. Moreover, while the testimony of Appellant significantly contradicts that of Officer Arbuckle in several material respects, once competent evidence is presented, it is the responsibility of the trier of fact to determine the credibility of the witnesses and the weight to be given their testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Cr.App.1986) (on motion for rehearing), *cert. denied*, 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988). In nonjury trials, the trial court is the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony. *Mattias v. State*, 731 S.W.2d 936, 940 (Tex.Cr.App.1987), *cert. denied*, 488 U.S. 831, 109 S.Ct. 86, 102 L.Ed.2d 62 (1988); *Matter of H.R.A.*, 790 S.W.2d 102, 104 (Tex.App.—Beaumont 1990, no writ). In the instant case, the trial court chose to believe the State's version of the facts. Therefore, viewing the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. Appellant's points of error are overruled.

The judgment of the trial court is affirmed.