NO.
12-05-00208-CR

 

IN THE COURT OF APPEALS 

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

ANDRE
LEGALE JENKINS,         §                      APPEAL FROM THE 241ST

APPELLANT

 

V.        §                      JUDICIAL
DISTRICT COURT OF

 

THE STATE OF TEXAS,

APPELLEE   §                      SMITH COUNTY, TEXAS

                                                                                                                                                           


            MEMORANDUM OPINION

            A
jury convicted Appellant Andre Legale Jenkins of burglary of a habitation with
the intent to commit aggravated assault and aggravated robbery.  The jury also assessed punishment at sixty
years of imprisonment and made an affirmative finding of a deadly weapon.  Appellant raises five issues on appeal.  We affirm.

            

Background








            Appellant was indicted for burglary
of a habitation with the intent to commit aggravated assault and aggravated
robbery.  See Tex. Pen. Code Ann. § 30.02 (a)(1)
(Vernon 2003). Appellant pleaded “not guilty,” and the matter proceeded to a
jury trial.  The evidence showed that
Willie Crumpton was asleep on the couch in his cousin’s front room about eight
or nine o’clock in the morning when Appellant entered the house uninvited.  Appellant grabbed Crumpton’s neck from
behind.  Appellant then hit Crumpton with
his fist and threatened him with a large knife. 
Appellant rummaged in Crumpton’s pockets demanding money and drugs.  Crumpton struggled free of Appellant’s grasp
on his neck, arose, and turned to face Appellant.  Appellant continued gesturing menacingly at
Crumpton with the “large . . . saber-like knife” and demanding money.  Crumpton said the knife did not come from his
cousin’s house.  

            Crumpton’s cousin was awakened by
the commotion.  She came into the living
room, which distracted Appellant and allowed Crumpton to run to the house next
door to seek help.  Appellant followed
him and continued to menace him with the knife. 
Crumpton testified that he was afraid Appellant would cut him with the
knife, and was concerned that Appellant could kill him.  After threatening Crumpton for several
minutes in the yard, Appellant left with his wife, who had been outside, and
walked back to his parents’ house. 
Crumpton said he recognized Appellant because he had seen Appellant and
his wife in the neighborhood.  After the
police arrived, they took Crumpton to Appellant’s parents’ house, and Crumpton
identified Appellant, who was standing in a large crowd of people.

            The jury found Appellant guilty of
burglary of a habitation with the intent to commit aggravated assault and
aggravated robbery as charged in the indictment and sentenced him to sixty
years of imprisonment.  The jury also
made an affirmative finding of a deadly weapon. 
This appeal followed.

            

Batson Motion

            In his first issue, Appellant
complains that the trial court erred in denying his Batson[1]
motion. Specifically, he contends that the State engaged in purposeful
discrimination by using its peremptory challenges to excuse four black venire
members who were within the strike line and, when this conduct was challenged,
did not provide race neutral explanations for its actions.

Applicable
Law

            The Equal Protection Clause of the
Fourteenth Amendment to the United States Constitution forbids a prosecutor
from challenging potential jurors solely on the basis of their race.  U.S.
Const. amend. XIV; Batson, 476 U.S. at 89, 106 S. Ct. at
1719.[2]  A defendant who makes a Batson challenge
must first make a prima facie showing that the prosecutor has used a peremptory
challenge to remove a potential juror on account of race.  Purkett v. Elem, 514 U.S. 765,
767, 115 S. Ct. 1769, 1770, 131 L. Ed. 2d 834 (1995).  A defendant may establish a prima facie case
solely on evidence concerning the prosecutor’s exercise of peremptory
challenges at trial.  Batson,
476 U.S. at 96, 106 S. Ct. at 1723.  To
establish such a case, the defendant must first show that he is a member of a
cognizable racial group and that the prosecutor has exercised peremptory
challenges to remove from the venire members of the defendant’s race.[3]  He must also show that these facts and any
other relevant circumstances raise an inference that the prosecutor used that
practice to exclude the venire members from the jury on account of their race.  Id.

            Once a defendant has made a prima
facie showing, the burden shifts to the state to come forward with a race
neutral explanation for challenging the venire members.  Id., 476 U.S. at 97-98, 106 S.
Ct. 1723-24.  If the state offers race
neutral reasons for the strikes, the defendant is afforded the opportunity to
rebut those explanations.  Shuffield
v. State, 189 S.W.3d 782, 785 (Tex. Crim. App. 2006).  The defendant carries the burden to prove
purposeful discrimination.  Id.  The trial court then will have the duty to
determine if the defendant has established purposeful discrimination.  Batson, 476 U.S. at 97-98, 106
S.Ct. at 1723-24.          

            Although a prima facie case of
discrimination can be supported by the differential of strikes made by the
prosecution among various races and ethnic groups, the critical step in the
analysis of a Batson challenge is the prosecutor’s reason for any
disparate striking of potential jurors based on similar responses to questions
posed to the venire panel.  See Miller-El
v. Dretke, 545 U.S. 231, 241, 125 S. Ct. 2317, 2325, 162 L. Ed. 2d 196
(2005) (“If a prosecutor’s proffered reason for striking a black panelist
applies just as well to an otherwise-similar nonblack who is permitted to
serve, that is evidence tending to prove purposeful discrimination to be
considered at Batson’s third step.”).  The credibility of the prosecutor’s reasons
for disparate striking of jurors can be measured by, among other factors,  “the prosecutor’s demeanor; by how
reasonable, or how improbable, the explanations are; and by whether the
proffered rationale has some basis in accepted trial strategy.”  Miller-El v. Cockrell, 537 U.S.
322, 339, 123 S. Ct. 1029, 1040, 154 L. Ed. 2d 931 (2003).

            We will only disturb a trial court’s
ruling on a Batson motion if it is “clearly erroneous.”  Guzman v. State, 85 S.W.3d 242,
254 (Tex. Crim. App. 2002).  Generally, a
fact finder’s decision is clearly erroneous when it leaves an appellate court
with a “definite and firm conviction that a mistake has been committed.”  Id. (citing United States
v. Fernandez, 887 F.2d 564, 567 (5th Cir. 1989)).  The clearly erroneous standard is an
especially rigorous one where the findings are based primarily on oral
testimony and the trial judge has viewed the demeanor of the witnesses.  Fernandez, 887 F.2d at 567; see
also Alexander v. State, 866 S.W.2d 1, 8 (Tex. Crim. App. 1993).

            We review the evidence in the light
most favorable to the trial court’s ruling and afford great deference to that
ruling.  Jasper v. State,
61 S.W.3d 413, 422 (Tex. Crim. App. 2001). 
Furthermore, a claim that the proffered race neutral reasons for strikes
are pretextual presents a question of fact, not law, and the trial court is in
the best position to evaluate such claims. 
Gibson v. State, 144 S.W.3d 530, 534 (Tex. Crim. App.
2004).  

Application
of Law

            At the Batson hearing,
Appellant pointed out that the State struck venire members[4] number 8 (Ryder),
number 11 (Reed-Towels), number 15 (Wallace), and number 19 (Allen), and stated
that those persons were the only black members of the venire panel.  The prosecutor responded that he had struck
all who chose rehabilitation as  the
primary consideration in sentencing.  

            Venire Member Ryder.  The prosecutor noted that Ryder said “rehab”
was the primary consideration in sentencing. 
A venire member’s belief that rehabilitation is the primary
consideration in punishment may be a race neutral reason for the use of a peremptory
challenge.  Victor v. State,
995 S.W.2d 216, 222 (Tex.App.–Houston [14th Dist.] 1999, pet. ref’d) (citing Adanandus
v. State, 866 S.W.2d 210, 224-25 (Tex. Crim. App. 1993)).  Appellant countered that Caucasian venire
member number 2 (Atwood), venire member number 3 (Stephenson), and venire
member number 4 (Davis) also indicated a preference for rehabilitation.    Atwood said, “[I]t depends on the
situation, but if rehab is not going to do the job, then punishment should be
done.”  Stephenson said, “I believe if
they’re being rehabilitated, but being punished at the same time, both of them.”  Davis said, “I think it completely depends on
the situation, and I just - - I guess I would have to go with punishment in the
end, but I’d rather go with rehabilitation first.”  As compared with Ryder’s unequivocal “rehab,”
the responses of the other three are less absolute, and each discussed the
merits of punishment as a consideration. 
Thus, Ryder’s answer is distinguishable from the answers of several
venire members who were not struck, but who, according to Appellant, gave
answers similar to Ryder’s.       

            Further, the prosecutor proffered
additional explanations for not striking those three venire members.  Atwood had been the victim of a burglary,
which was the charged offense in Appellant’s case.  Stephenson’s brother had been treated “very”
fairly by law enforcement and the legal system when he had been arrested.  Davis’s husband had been a juror in a
previous case.  Each of these additional
explanations revealed further insights into the prosecutor’s evaluation of
these venire members as prospective jurors, and are additional race neutral
explanations for striking Ryder but not Atwood, Stephenson, and Davis.             

            Venire Member Reed-Towels.  The prosecutor’s explanation for striking
venire member Reed-Towels was that she said she needed more information to
determine which was the more important sentencing consideration, rehabilitation
or punishment. Failure to answer questions is a race neutral explanation for use
of a peremptory challenge.  Ester
v. State, 151 S.W.3d 660, 662 (Tex. App.–Waco 2004, no pet.)  

            Venire Member Wallace.  The prosecutor explained that venire member
Wallace was the only person on his row who did not initially raise his card
after the sentencing question was asked and had to be called upon for a
response.  Further, the prosecutor stated
that Wallace “never gave an answer to whether or not [sentencing] was for
punishment or rehabilitation.”  When
called on by the prosecutor, Wallace responded that it “depend[ed] on what’s
the case, what he’s charged with.”








            Failure to answer questions has been
held to be a race neutral explanation for use of a peremptory challenge.  Ester, 151 S.W.3d at 662.  Inattentiveness is also a race neutral reason
for exercising a peremptory challenge. Yarbrough v. State, 983
S.W.2d 352, 357 (Tex. App.–Fort Worth 1998, no pet.); Moore v. State,
811 S.W.2d 197, 199 (Tex. App.–Houston [1st Dist.] 1991, pet. ref’d).

            Venire Member Allen.  The prosecutor explained that he struck
venire member Allen because she knew one of the witnesses in the case,
Appellant’s mother, and her daughter is related to Appellant’s family.  A venire member may be peremptorily
challenged because she is acquainted with a defendant or his family.  Thornton v. State, 925 S.W.2d
7, 11 (Tex. App.–Tyler, 1994, pet. ref’d). 

            Having reviewed the entire record,
we conclude that the trial court’s decision to overrule Appellant’s Batson
motion was not clearly erroneous. 
Even if a prima facie case of racial discrimination was established, the
prosecutor provided race neutral explanations for his use of peremptory
challenges, and Appellant failed to carry his burden of persuasion on the
issue.  See Yarbrough, 983
S.W.2d at 357 (“In the absence of evidence in the record to rebut the State’s
race-neutral explanation, we will not disturb the trial court’s finding that
the State’s explanation was legitimate.”). 
Therefore, Appellant’s first issue is overruled.

 

Denial of Motion for New Trial–Newly
Discovered Evidence

            In
his second issue, Appellant argues that the trial court erred in denying his
motion for new trial on the basis of newly discovered evidence, an alleged
eyewitness.  He states the issue as
follows:

 

The
trial court erred in denying Appellant’s Motion for New Trial because of newly
discovered evidence of an eye witness [sic] who was with the complainant and
the Appellant the entire night before the crime & [sic] present during the
burglary of habitation with intent to commit aggravated robbery and aggravated
assault, unknown to attorney, not due to lack of diligence, admissible evidence
nothing like the trial evidence but meshing with trial evidence in such
materiality, it will probably cause a different result if a new trial is
ordered, infringing upon Appellant’s right to a jury trial, right to present
witnesses and testimony in his behalf, cross examine witnesses against him,
& [sic] right to assistance of counsel under the United States and Texas
constitutions.  U.S. Const. amend. VI; Tex.
Const. art. I, § 10; Tex. Code
Crim. Proc. Ann. art. 40.001; (Clerk Rec. Pg. 96, Ground One, Motion New
Trial).

 

 

Waiver

            An
appellant’s brief must contain a clear and concise argument for the contentions
made, with appropriate citations to authorities and to the record.  Tex.
R. App. P. 38.1(h).  Further,
state and federal constitutional issues should be argued separately, with
authority and argument related to the individual protections offered by each
constitutional right, “with separate substantive analysis or argument provided
for each ground.”  Coggin v. State,
123 S.W.3d 82, 87 (Tex.App.–Austin 2003, pet. ref’d) (citing Muniz v.
State, 851 S.W.2d 238, 251 (Tex. Crim. App. 1993); Heitman v.
State, 815 S.W.2d 681, 690-91 n.23 (Tex. Crim. App. 1991)). Appellant
wholly failed to state the legal basis for the constitutional issues he
identifies, cite applicable case law, or develop the legal arguments supporting
his assertion that the named rights were violated.  We decline to make Appellant’s arguments for
him.  See Muniz,
851 S.W.2d at 252.  Therefore, Appellant’s
constitutional issues are waived. 
However, we will address the merits of the argument Appellant actually
made and supported with case law: whether the trial court erred in denying
Appellant’s motion for new trial based on newly discovered evidence, a witness
named Kent Towels. 

Newly Discovered Evidence

            Appellant
asserts that he should have been granted a new trial because of a newly
discovered eyewitness, Kent Towels. 
Appellant contends that his counsel did not know about Kent Towels prior
to trial, and that Towels’s testimony is counter to the testimony of Crumpton,
the victim.  

            A
new trial shall be granted an accused where material evidence favorable to the
accused has been discovered since trial. 
Tex. Code Crim. Proc. Ann.
art. 40.001 (Vernon Pamph. Supp. 2006). 
A defendant is entitled to have his motion for new trial granted if he
shows that (1) the newly discovered evidence was unknown to him at the time of
trial; (2) his failure to discover the new evidence was not due to his lack of
due diligence; (3) the new evidence is admissible and not merely cumulative,
corroborative, collateral, or impeaching; and (4) the new evidence is probably
true and will probably bring about a different result in a new trial.  Wallace v. State, 106 S.W.3d
103, 108 (Tex. Crim. App. 2003).  A
defendant is not entitled to a new trial on the ground of newly discovered
evidence when the evidence was that of which he was aware but failed to obtain
by subpoena.  Drew v. State,
743 S.W.2d 207, 227 n.16 (Tex. Crim. App. 1987).  Nor is the defendant entitled to a new trial
when he had knowledge of the evidence, but failed to communicate it to his
attorney.  Id. at 227 n.14.

            The
trial court has discretion to decide whether to grant a new trial based upon
newly discovered evidence, and its ruling will not be disturbed absent an abuse
of discretion.  Keeter v. State,
74 S.W.3d 31, 37 (Tex. Crim. App. 2002). 
Where, as here, the trial court conducts a hearing on a motion for new
trial, the trial judge is the trier of fact and the sole judge of witness
credibility. Woodall v. State, 77 S.W.3d 388, 393 (Tex. App.–Fort
Worth 2002, pet. ref’d).

            Towels
did not testify at the hearing on the motion for new trial, but his affidavit
was admitted into evidence at the hearing. 
Towels states in his affidavit that he was peeking through Crumpton’s
front door when Appellant attacked Crumpton, but left while Appellant was still
in Crumpton’s house.  According to Towels’s
affidavit, he would have testified that (1) he, Appellant, and Crumpton were
together the night before the burglary, (2) Appellant obtained the knife he
used against Crumpton while the three were together, (3) the knife was Crumpton’s
knife, (4) Appellant entered the house, (5) a sleeping child was on Crumpton’s
chest when Appellant entered the house, and (6) Appellant struck Crumpton in
the face during the burglary, but did not take out the knife or threaten
Crumpton with it while Towels was watching.

            Generally,
Towels’s affidavit supports the State’s allegations that Appellant entered
Crumpton’s house and assaulted him.  His
statement that the knife belonged to Crumpton relates to a collateral matter
and not to an element of the offense. 
Towels’s statement that he, Crumpton, and Appellant had been together
the night before the burglary serves only to impeach Crumpton’s testimony that
he did not know Appellant well.  Towels’s
statement that Appellant did not take out the knife or threaten Crumpton with
it while Towels was watching is inconsistent with Crumpton’s trial testimony
regarding Appellant’s use of the knife. 
The trial court reasonably could have resolved this inconsistency in
favor of the State.   The trial court
also reasonably could have concluded that Towels’s testimony, if admitted,
would not bring about a different result in a new trial.

            Appellant
knew that Towels lives across the street from Crumpton and, according to the
affidavit, went to Towels’s house looking for Crumpton immediately before the
burglary.  Appellant does not assert that
Towels was unavailable or missing before the trial.  Yet, Appellant did not tell his counsel about
Towels, make any pretrial attempt to learn what Towels knew about the incident,
or subpoena him for trial.  Consequently,
the trial court reasonably could have concluded that Appellant did not use due
diligence in discovering that Towels was an eyewitness.      

            The
record supports the trial court’s conclusion that Appellant did not show
himself entitled to a new trial because of newly discovered evidence.  Therefore, the trial court did not abuse its
discretion in denying Appellant’s motion for new trial on that ground.  Appellant’s second issue is overruled.

 

Denial of Motion for New Trial Due–Competence
to Stand Trial

            In
his third issue, Appellant argues that the trial court erred in denying his
motion for new trial because 

 

Appellant was not competent to stand trial while
unable to assist his attorney by conveying crucial facts in trial preparation
& [sic] unable to comprehend the ramifications of testimony against him
during trial, infringing upon Appellant’s right to present evidence in his
behalf & [sic] cross examine witnesses against him in a jury trial, right
to assistance of counsel, right to due 
process of law & [sic] equal protection of the law under the United
States and Texas Constitutions, & [sic] Code  of Criminal Procedure of Texas.  U.S.
Const. amends. V, VI, XIV, § 1; Tex.
Const. art. I, § 10; Tex. Code
Crim. Proc. Ann. arts. 46B.024 (1) (A).

 

 

            As previously discussed, an
appellant’s brief must contain a clear and concise argument for the contentions
made, with appropriate citations to authorities and to the record.  Tex.
R. App. P. 38.1(h).  In support of
this multifarious issue, Appellant cites only one case, Drope v. Missouri,
420 U.S. 162, 171, 95 S. Ct. 896, 903, 43 L. Ed. 2d 103 (1975), for the
principle that a defendant’s mental condition may impact his due process right
to a fair trial.  Contrary to the requirement
of Rule 38.1(h), Appellant has cited no authority supporting his argument that
Appellant was incompetent to stand trial. 
Consequently, this issue is waived. 
However, even had Appellant not waived this issue, the result would not
change.  

            Prior to trial, Appellant’s attorney
raised the issue of competence.  The
trial court ordered Appellant examined by a licensed psychiatrist, Dr. Tynus
McNeel.  Dr. McNeel examined Appellant
and concluded that he was competent to stand trial. Dr. McNeel filed a report
of his findings with the court prior to trial. 
At the hearing on the motion for new trial, Appellant called as his
witness on the issue of competence a licensed chemical dependency counselor.  Specifically, Appellant called the counselor
to testify regarding an interview he had with Appellant two months before the
date of the charged offense.  The State
objected and contended that a licensed chemical dependency counselor was not
qualified to testify as to Appellant’s competence to stand trial.  The trial court sustained the State’s
objection. 

            A person who testifies as an expert
on a defendant’s competence to stand trial must be a licensed psychiatrist or
psychologist and meet an extensive list of requirements.   See
Tex. Code Crim. Proc. Ann. arts.
46B.021, 46B.022 (Vernon Pamph. Supp. 2006). 
In this case, the licensed chemical dependency counselor testified about
his qualifications, which did not meet the requirements of Article 46B.022.  Therefore, he was not qualified to testify as
an expert on Appellant’s competence.  See
id., art. 46B.022. 
Further, the evaluation he performed on Appellant occurred two months
prior to the offense.  Having failed to
meet the requirements necessary to testify as an expert on Appellant’s
competence, the trial court did not err in sustaining the State’s objection to
the counselor’s testimony.  Since there
was no competent evidence adduced by Appellant on this issue, the trial court
did not err in denying Appellant a new trial based on Appellant’s alleged
incompetence to stand trial.  

            Appellant’s third issue is
overruled.

 

Motion for New Trial–Exclusion of Evidence

            In his fourth issue, Appellant
contends the trial court erred at the hearing on the motion for new trial in
sustaining the State’s objections to the testimony of the licensed chemical
dependency counselor regarding his diagnosis and treatment of Appellant’s “dual
diagnoses of suffering from drug dependency disorder and a mental health
condition.”[5] 

            As stated above, an appellant’s
brief must contain a clear and concise argument for the contentions made, with
appropriate citations to authorities and to the record.  Tex.
R. App. P. 38.1(h). Because Appellant has failed to make any legal
argument or include appropriate citation to authorities, he has waived the
issue.  Muniz, 851 S.W.2d
at 251; Heitman, 815 S.W.2d at 690-91 n.23; see also Tex. R. App. P. 38.1(h).  








            In an attempt to show that he was
not competent to stand trial, Appellant wanted the licensed chemical dependency
counselor to testify about his diagnosis and treatment of Appellant. As we
noted in our discussion of Appellant’s third issue, Appellant failed to
establish that the counselor was qualified to testify as an expert on the issue
of Appellant’s competence. The trial court permitted the counselor to testify
on a bill of review, which is included in the appellate record in this
case.  Nothing in the bill of review
persuades us that the trial court erred in sustaining the State’s objections to
this testimony.  

            Appellant’s fourth issue is
overruled.

 

Motion for New Trial-Jury Charge Error

            In his fifth and final issue,
Appellant contends the trial court erred in denying the motion for new trial
because of an erroneous jury instruction. Appellant’s issue is inadequately
briefed, containing little relevant case law. Therefore, Appellant has waived
this issue on appeal.  Further, Appellant
complains of  jury charge error, but
failed to object to the charge of which he now complains.  

            Appellant maintains that the
omission of the phrase “as charged in the indictment” from the sentence “If you
do not so find, or if you have a reasonable doubt thereof, you will find the
defendant “Not Guilty” of burglary of a habitation”was structural error.  This structural error, his argument
continues, “could very well have been a factor in the jury coming back with a
verdict of guilty . . . .” To obtain a reversal in the absence of an
objection to a jury charge, Appellant must establish that the jury instruction
of which he belatedly complains resulted in “egregious harm” to him at
trial.  Almanza v. State,
686 S.W.2d 157, 171 (Tex. Crim. App. 1985)(op. on reh’g).  However, Appellant presents nothing more than
a supposition without the benefit of supportive case law.  Therefore, he has failed to comply with Rule
38.1(h), see Tex. R. App. P. 38.1(h),
and we decline to make his argument for him. 
See Muniz, 851 S.W.2d at 252.  Accordingly, Appellant has waived his fifth
issue.

            Appellant’s fifth issue is
overruled.

 

Disposition

            Having overruled Appellant’s five
issues, we affirm the trial court’s judgment.

                                                                                                    SAM GRIFFITH   

                                                                                                               Justice

Opinion delivered October 25,
2006.

Panel
consisted of Worthen, C.J., Griffith, J., and Hoyle, J.

 

(DO NOT PUBLISH)











[1]  See Batson
v. Kentucky, 476 U.S. 79, 106 S.
Ct. 1712, 90 L. Ed. 2d 69 (1986).





[2]  The Texas
Legislature codified the Batson rule in Article 35.261 of the
Texas Code of Criminal Procedure, but Appellant does not present a specific
claim under that article.  





[3]  In Batson,
the Supreme Court reaffirmed that racial discrimination in the use of
peremptory challenges denies a defendant the equal protection of the law
guaranteed by the U.S. Constitution.  Batson,
476 U.S. at 85, 106 S. Ct. at 1716. 
Since that time, the issue of discrimination in the use of peremptory
strikes has also come to be understood in terms of a denial of the equal
protection rights of prospective jurors. 
See Powers v. Ohio, 499 U.S. 400, 409-11, 111 S. Ct. 1364,
1370-71, 113 L. Ed. 2d 411 (1991).  Furthermore,
the cognizability of discrimination in the jury selection process has been
extended to categories beyond race.  See,
e.g., Guzman v. State, 85 S.W.3d 242, 245-46 (Tex. Crim. App. 2002)
(recognizing that Batson claim may be brought to challenge discriminatory
exclusion of jurors on the basis of gender or ethnicity).  Because Appellant brings a claim only under Batson
and because he and the jurors who were struck are of the same cognizable racial
group, we apply the Batson standard.





[4] It is difficult to follow the discussion of which venire members
responded in a certain manner and which were actually chosen for the jury
because the attorneys sometimes identified the venire members by number and
sometimes by name.  Neither a jury list
nor a juror strike list is included in the record.  These lists would include both the names and
the numbers of the venire members.





[5] Appellant cited one case in this issue, Taylor v. State,
163 S.W.3d 277, 281 (Tex. App.–Austin 2005, pet. dism’d), which stands for the
principle that a motion for new trial is not necessary to raise an issue on
appeal.  No cases were cited in support
of the admissibility of the testimony of the licensed chemical dependency
counselor.